# Wytheville.

BUNTING V. COCHRAN AND OTHERS.

JULY 4, 1901.

Absent, Harrison, J.

1. CHANCERY JURISDICTION—*Unliquidated Damages—Insolvency.*—Without an allegation of insolvency, or when such allegation is not established, a court of equity is without jurisdiction to entertain a suit for unliquidated damages.

2. SET-OFFS—*Unliquidated Damages.*—Set-off is allowed only when there is a debt on each side, and not when the claim of either party is for unliquidated damages.

3. SET-OFF — *Unliquidated Damages — Agreement — Insolvency—Non-Residence.*—In the absence of an agreement between the parties, or some special circumstances, such as insolvency or non-residence, unliquidated damages cannot be pleaded by way of set-off.

4. RECOUPMENT—*Case in Judgment.*—The right of recoupment arises when the basis of the plaintiff's action is a contract by the defendant, who may, if he chooses, recoup any damages which may have resulted to him by breach of another portion of the same contract, or of a contract made at the same time, and constituting a part and parcel of the same transaction, whether contained in one writing, or one in a writing and the other parol, provided, however, they are all one transaction. In the case in judgment, the counter claim asserted by the defendant did not grow out of the same transaction, but is for unliquidated damages in a wholly different transaction.

5. APPEAL AND ERROR—*Amount in Controversy—Allowance of Set-Offs.*— Where the full amount of a set-off allowed to a defendant exceeds five hundred dollars, an appeal lies to this court on behalf of the complainant, although the amount decreed against him is less than that sum.

Appeal from two decrees of the Circuit Court of Wise county, pronounced December 16, 1898, and December 13, 1899, in a

suit in chancery, wherein Joseph L. Kelley, trustee, was the complainant, and the appellant and the appellees were the defendants.

*Reversed.*

The debt asserted in this case by Bunting was upon a note for $435, given by Cochran to William S. Stuart for borrowed money, which note, by several successive assignments, had come into the hands of Bunting. The note was subject to a credit of $120. Cochran by his answer and cross-bill admitted the note, but claimed that Bunting had defrauded him in the sale of certain stock, and that he had been damaged thereby at least the sum of $560, which he asked to set off against the note held by Bunting. By the decree appealed from Cochran recovered against Bunting $560, with interest from February 12, 1898, until payment, subject to a credit of $315—being the balance due on the note. Cost was also decreed in favor of Cochran against Bunting. From this decree Bunting appealed.

*Bullit & Kelly,* for the appellant.

*R. T. Irvine,* for the appellees.

KEITH, P., delivered the opinion of the court.

Joseph L. Kelly, trustee, filed his bill in the Circuit Court of Wise county, in which he shows that in 1898 C. C. Cochran and wife executed their note, payable in thirty days, to William S. Stuart for $435, and secured its payment by deed of trust of even date, conveying to Kelly the Big Stone Gap Telephone Exchange, and all lines, franchises and appliances connected therewith; that by several successive assignments this note was passed to Joseph Bunting, Jr., the holder thereof; that there has been no payment made upon it except the sum of $120, and a release of the interest thereon from the 7th of February,

1898, to August of the same year. The bill further shows that in October, 1897, one Rufus A. Ayers instituted an attachment in equity against Cochran upon two negotiable notes for the sum of $171, and obtained a personal decree against Cochran for that amount, and an order to the sheriff of Wise county directing a sale of the property mentioned in the deed of trust. In accordance with the provision of the trust deed, he had been called upon by Bunting, the holder of the note, to sell the trust property, and, under the circumstances, he is advised that "a sale ought not to be had separately, either under said decree or under said deed of trust, but that the two sales so provided for as aforesaid should be provided for at one and the same time." He therefore asked the court to take jurisdiction over the subject, enjoin the sheriff from selling under the decree in the attachment suit, and decree such a sale as will protect the interests of those having liens upon the property.

Cochran filed his answer, and admits the balance due upon the note, and then enters into a statement of a transaction between himself and Bunting, in no respect connected with or growing out of the execution of the note, by which he alleges that he was induced by Bunting to sell certain shares of stock in a corporation which he and Bunting had been instrumental in organizing; that after the sale of the stock he ascertained that Bunting had become its purchaser at a price greatly below its actual value; that the sale had been brought about by a conspiracy between Bunting and certain confederates, the object of which was to defraud Cochran, and as a result of which the shares of stock were sacrificed, and he had suffered a loss which he estimates to be at least the sum of $560. He asks that this sum be set off against the balance which he admits is due upon the note originally executed by him to W. S. Stuart, and now held in due course of business by Bunting, and that he be given a decree for the excess of the set-off over and above the admitted demand. He avers that Bunting is insolvent, and prays that his answer may be treated as a cross-bill.

Bunting answered this cross-bill denying all the allegations of fraud specifically, and concludes his answer as follows: "Respondent is advised that upon said Cochran's own statement he has no substantial defence against the note sued on; but, because his allegations are so utterly at variance with the facts, and out of abundance of caution, your respondent has deemed it expedient and proper to answer thus at length.

"And now, having fully answered, and here denying all the allegations in said cross-bill, not hereinbefore admitted or denied, respondent prays to be hence dismissed, with his costs in this behalf expended."

The answer of Cochran originally filed, which he prays may be taken as a cross-bill, does not waive an answer under oath, and Cochran asked for and obtained leave of the court to amend by inserting the waiver, which the court permitted to be done. In the meantime, however, the answer of Bunting had been filed under oath, and we are asked to decide whether or not it was proper to permit the amendment under the circumstances.

In the view of the case which we take it is unnecessary to decide this question, and we therefore express no opinion with respect to it. We do think, however, that the answer of Bunting was sufficient to put in issue every allegation of the bill which it does not admit to be true.

It may be conceded that the cross-bill states a case upon which Cochran would be entitled to recover damages in a proper action, and that the allegation of Bunting's insolvency would give a court of equity jurisdiction to hear and determine a controversy which otherwise could be entertained with propriety only in a court of law; but the answer denies that Bunting was insolvent and the proof fails to establish the fact. It is true that Cochran, in his deposition, states, in answer to a question as to the financial condition of J. Bunting, Jr.: "I considered him insolvent. He draws a salary from $100 to $125 a month from the Norfolk & Western railroad, and I have always understood that he prac-

tically spent it each month; and he had no other revenue that I know of." This is obviously mere matter of opinion. No fact is stated upon which that opinion is predicated. There is no evidence in this record of any debt which Bunting has failed to pay in due course of business. It is shown that he is the owner of more than 150 shares of stock which Cochran himself proves are very valuable. He was associated with Cochran in extensive business enterprises, and there is proof in the record of transactions of considerable magnitude, in which he seems to have been the business manager, and there is no proof that his checks have ever been dishonored, or that he has failed to meet his obligations when due.

The allegation of insolvency being thus disposed of, leaves a court of equity without jurisdiction to entertain a suit for unliquidated damages.

In 1 Barton's Law Practice (2d ed.), p. 510, it is said: "The set-off must be of the same general character as the claim. An unliquidated demand cannot be set off against a liquidated claim, nor can a debt due be the subject of set-off against an unliquidated demand. In the language of the authorities upon the subject of an unliquidated set-off, ' it must be capable of being liquidated or ascertained with precision at the time of pleading.' "

"Set-off is allowed only when there is on each side a debt, and not when the claim of either party is for unliquidated damages." 5 Rob. Pr., p. 964.

"The general rule is incontrovertible, both at law and in equity, that unliquidated damages cannot be pleaded by way of set-off unless there is some understanding between the parties, express or implied, under which the defence can be let in, or some special case made, such as insolvency, non-residence, &c." 7 Waits Actions and Defences, p. 481; *Guano Co.* v. *Apling,* 43 W. Va., 470.

That a recovery by Cochran upon the case stated in his cross-bill would be for unliquidated damages is, we think, beyond

Opinion.

doubt. If a sufficient cause of action is stated, it has every char-acteristic of an action for deceit.

It does not come within the doctrine of recoupment as distin-guished from set-off.

"The right to *recoupment* arises when the basis of the plain-tiff's action is a contract by the defendant, who may, if he chooses, recoup any damages which may have resulted to him by breach of another portion of the same contract, or of a contract made at the same time and constituting a part and parcel of the same transaction, whether contained all in one writing, or in two separate writings, or one in a writing and the other parol, provided, however, they are all one transaction." *Logie* v. *Black*, 24 W. Va. 19, and authorities there cited, in which the opinion was delivered by Judge Green, was concurred in by his associates, and may be safely accepted as a correct statement of the law.

We are of opinion that the Circuit Court erred in allowing the set-off, and for this error its decree must be reversed, and the cause remanded with instructions to proceed to a final decree in accordance with this opinion; Cochran, however, not to be prejudiced in his right to bring his action at law to recover the damages which we have disallowed.

Appellee challenges the jurisdiction of this court upon the ground that less than $500 is involved. In this, we think, he is manifestly mistaken. It is true that Bunting can satisfy the decree by the payment of a less sum than $500, but it is also true that he is aggrieved by the full amount of the set-off established against him, and Cochran will not be permitted, by conceding a demand which he is unable to dispute, to deprive his debtor of the right to appeal from an erroneous claim upon his part suffi-cient in amount to give jurisdiction to this court.

*Reversed.*