## Richmond.

## New Idea Spreader Company v. R. M. Rogers & Sons.

### November 15, 1917.

1. Set-off, Recoupment and Counterclaim—*Whether Plea One of Set-off or Recoupment.*—There were several contracts between the plaintiffs and the defendants, but where the special plea of defendants alleged facts from which the conclusion necessarily followed that the contract, out of the breach of which arose the set-off claimed by defendants, was a separate and distinct contract from that or those under which the indebtedness sued for by the plaintiffs arose, the plea was one of set-off under section 3298, Code of 1904, and not of recoupment under section 3299, Code of 1904.

2. Set-off, Recoupment and Counterclaim—*Whether Plea One of Set-off or Recoupment—Case at Bar.*—Plaintiffs brought an action against the defendants, their exclusive agents for the sale of manure spreaders in a certain territory, for the sum of $485.27, for certain spreaders sold and furnished by plaintiffs to defendants. This indebtedness arose under a contract or contracts existing between plaintiffs and defendants prior to the year 1915 and was admitted by defendants, who by a special plea claimed a set-off, aggregating the sum of $1,000, consisting of certain losses of profits by defendants, through a breach by the plaintiffs of a contract with the defendants, entered into on January 20, 1915, giving them the exclusive right to sell the plaintiff's manure spreaders in the same territory during the year 1915; the plaintiffs undertaking that they would fill all orders for defendants, at certain wholesale prices; and, that defendants should have the exclusive right to sell the manure spreaders of the plaintiffs in the territory so long as they might have on hand unsold spreaders so bought. Under this contract, defendants expended time and money in canvassing the territory, and took orders for twenty-six manure spreaders. Plaintiffs thereupon refused to fill an order by defendants for a carload of spreaders, and contracted with another agent in the territory for the sale of the spreaders. Defendants' plea set out *in totidem verbis* the stipulations in writing subject to which all the orders for goods were given, which were given by defendants, prior to the contract of Jan-

uary 20, 1915. These stipulations were parts of the plea and showed on the face of it that each order prior to the contract of January 20, 1915, stood alone and formed the basis of a separate and distinct contract with plaintiffs, and ended when all the spreaders obtained by each respective order were sold. Therefore the ensuing allegations in the plea to the effect that the contract between plaintiffs and defendants existing in the summer of 1915, which was then broken by plaintiffs, was "upon the same basis and conditions as are set out" in said stipulations, alleged facts from which the conclusion necessarily followed that the contract, out of the breach of which arose the set-off claimed was a separate and distinct contract from that or those under which the indebtedness sued for by plaintiffs arose, and the plea was one of set-off under Code of 1904, section 3298, and not of recoupment under section 3299 of the Code of 1904.

3. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Plea of Set-off—Description of Claim.*—A plea of set-off which clearly described the set-off as consisting of loss of profits and set forth how and from what cause the loss of profits occurred described the set-off claimed by defendants so "as to give the plaintiffs notice of its nature" as required by section 3298, Code of 1904. Although the plea might have gone more into *particulars* as to several items of loss of profits, such as giving the names of the customers referred to, on loss of sales to whom the loss of profits alleged occurred, this would have added nothing to the description of *the nature* of the set-off claimed.

4. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Bill of Particulars.*— The remedy of the plaintiffs to obtain further particulars of the set-off claimed by the defendants was by motion for a bill of particulars under section 3249 of the Code of 1904, and not by objection to the plea.

5. CONTRACT FOR SALE OF MACHINERY—*Mutuality of Obligation.*— Plaintiffs assured defendants that if they would expend the necessary time and incur the necessary expense in making a canvass of certain territory to press the retail sale of plaintiffs' machinery during the year 1915, that plaintiffs would fill all orders defendants might in 1915 give for machinery at certain wholesale prices, and defendants should have the exclusive right to sell plaintiffs' machinery in said territory so long as they had on hand unsold goods. Accordingly, defendants made special efforts to sell plaintiffs' machinery and expended time and money in canvassing the territory and ordered of plaintiffs a carload of the machinery, which plaintiffs refused to furnish.

*Held:* That there was a meeting of the minds of the plaintiffs and defendants upon a contract by which the plaintiffs agreed to sell and deliver to the defendants such machinery as defendants might make retail sale of and order of plaintiffs in the year 1915, and there was a binding obligation on the part of the defendants to take and pay for such machinery, so as to create a mutuality of obligation in the premises.

6. SALE OF GOODS—*Repudiation of Contract by Seller—Duty of Purchaser.*—Under the circumstances set forth in the preceding syllabus, the refusal of the plaintiffs to ship the carload of machinery ordered by the defendants relieved the defendants of the need to go through the useless performance of giving any further order.

7. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Loss of Profit.*—The loss of profit by defendants, on the sale of twenty-six manure spreaders, which they made before the breach by the plaintiffs of their contract to furnish defendants with the spreaders when ordered, was such damage as could be set-off under section 3298, Code of 1904.

8. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Statute—Construction.*—Section 3298, Code of 1904, has been liberally construed in furtherance of its obvious policy which is to prevent a multiplicity of suits and as far as may conveniently be done to effectuate in one action complete justice between the parties.

9. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Unliquidated Damages.*—If the amount of the claim of the defendant is so unliquidated that it cannot be ascertained by computation or calculation from definite data supplied by the evidence, and lies in mere opinion, as for instance, damages for not using a farm in a workmanlike manner, for not building a house in a good and sufficient manner; on a warranty for the sale of a horse; for not skillfully amputating a limb; for carelessly upsetting a stage, by which a bone is broken; for not making repairs to a dwelling·house; for unskillfully working raw materials into a fabric; and other cases of like character, where the amount to be settled rests in the discretion, judgment or opinion of the jury, such claim cannot be set-off under the statute, section 298, Code of 1904. But where the damages are to be assessed upon pecuniary demands and are determinable by computation or calculation from data supplied by the evidence, they are so far liquidated that they may be set-off under the statute in question.

10. MASTER AND SERVANT—*Breach of Contract of Employment—Damages.*—Where a breach of contract of employment occurs before the party thereto claiming damages for its breach has

fully performed the contract on his part, he must, as soon as he knows of such breach of contract, minimize his damages by engaging in other employment, if he can obtain it, and not persist in thereafter continuing, in order to aggravate his damages, in a course of conduct which can under the circumstances be of no value to the party who has broken the contract. But this rule has no application to the instant case, where the profits in question were all completely earned by the defendants before they knew or had any intimation of the breach of contract on the part of the plaintiffs.

Error to a judgment of the Circuit Court of Augusta county, in a proceeding by motion for a judgment for money. Judgment for defendants. Plaintiffs assign error.

*Affirmed.*

## STATEMENT OF THE CASE AND FACTS.

This is an action at law by the plaintiffs in error, a partnership, against the defendants in error, also a partnership, in which the former (hereinafter referred to as defendants) sought to recover of the latter (hereinafter referred to as plaintiffs) the sum of $485.27, with interest from August 1, 1915, for certain goods sold and furnished by plaintiffs to defendants.

The indebtedness referred to arose under a contract or contracts existing between plaintiffs and defendants prior to the year 1915.

There is no controversy as to this indebtedness of defendants to plaintiffs. It is admitted by defendants, but the latter, by way of confession and avoidance, filed in the case several special pleas. In the view we take of the case it is deemed sufficient here to say in reference to such pleas (without considering any of the other pleas therein) that plea No. 4, filed May 11, 1916, with the general replication thereto, put in issue certain claims to set-off by the de-

fendants under section 3298 of the Code of Virginia, aggregating the sum of $1,000 consisting of certain losses of profits.

## THE EVIDENCE.

There is much conflict in the evidence in the case. We do not feel that a review of all of it in detail would serve any useful purpose. It is deemed sufficient to point out the material evidence on the following points.

The testimony for the plaintiffs in effect admits that during the years 1913 and 1914 the defendants acted as agents for the plaintiffs in a certain territory under a number of sales contracts, under which the defendants were expected to press the business of retail sales and were to order from time to time goods at wholesale prices from plaintiffs; for all of which goods ordered, however, defendants were outright purchasers and absolutely bound to make payment therefor to the plaintiffs at certain wholesale prices; but for retail sale of such goods at retail prices fixed by plaintiffs, defendants had the exclusive right of sale in said territory so long as they might have on hand unsold any goods ordered by them and furnished by plaintiffs, the plaintiffs agreeing that they would not contract with any other agent or sell goods to any other agent or other person in such territory so long as defendants might have unsold goods on hand as aforesaid. That the profits of defendants consisted in the difference between said wholesale prices and retail prices, less the expense of time and money outlay by defendants necessary to make said retail sales. That plaintiffs knew that defendants expected to continue selling their goods in the same way in 1915; but did not notify or intimate to the defendants that they (the plaintiffs) would not allow them to do so, until in May, 1915, after defendants had acted up to that time upon an express agreement with plaintiffs made, as de-

fendants' evidence shows, on January 20, 1915, as will be presently mentioned.

The precise point of difference between the plaintiffs and defendants as disclosed by the evidence in the case is this:

(a) The evidence for the plaintiffs is to the effect that the defendants' exclusive right to sell said goods in said territory ended when they sold out all goods they had on hand at any given time, if the plaintiffs in the meanwhile had not accepted and agreed to fill other orders from defendants for other goods. That as a matter of fact the contracts existing between plaintiffs and defendants during the years 1913 and 1914 did not bind plaintiffs to fill any orders from defendants except what they chose to fill. That each order stood alone and formed the basis of a separate and distinct contract. That in 1913 and 1914 the contracts as to each order, giving exclusive right to sell the goods covered by the order in said territory, ended when all such goods were sold. That as to 1915, no order was ever given during that year by defendants for goods. That if such order had been given, plaintiffs never agreed to accept or fill it; that there was no obligation on them to accept or fill any such order in 1915, and that all of the goods plaintiffs sold and furnished to defendants in 1913 and 1914 had been sold by defendants by March 1915 and before plaintiffs contracted with another agent in 1915 in said territory; and that plaintiffs contracted with such other agent because they were dissatisfied with defendants as agents because of their slowness in paying the amounts due by them and their lack of financial strength.

(b) The evidence for defendants is to the effect also, that during 1913 and 1914 each order given by them stood alone and formed the basis of a separate and distinct contract. That the contracts in 1913 and 1914 as to each order giving exclusive right to sell the goods covered by the order in said territory, ended when all such goods obtained

by each respective order were sold. But that on January 20, 1915, before the goods sold by plaintiffs to defendants in 1914 were sold out, the plaintiffs, by their eastern manager, acting within the scope of his general authority as he was held out to the public and to defendants by the plaintiffs, on a personal visit of such manager to the defendants, assured the latter that if they would expend the necessary time and incur the necessary expense of making a special canvass of said territory to press the retail sales of said goods during the year 1915, that plaintiffs would fill all orders defendants might in 1915 give for goods, at certain wholesale prices (the retail prices being also fixed as aforesaid) and that defendants should have the exclusive right to sell the goods of the plaintiffs in said territory so long as they might have on hand unsold goods so bought. That defendants were directed by such manager to order such goods in 1915 thruogh the traveling salesman of plaintiffs when defendants were ready for the goods to be shipped. That the said manager complimented the defendants on their excellent record as agents of plaintiffs; expressed more than satisfaction with them as such and urged them to greater exertions in efforts to make sales of said goods in 1915; nor did the plaintiffs in any way intimate to defendants any dissatisfaction with them as agents. That accordingly defendants made special efforts to make retail sale of said goods in the winter and spring following said assurance on January 20, 1915; that they expended a great deal of time and some money in expenses in canvassing said territory; that in the progress of such canvassing they ordered of the plaintiffs through said traveling agent, as directed by said manager of plaintiffs, a carload of said goods, consisting of fifteen manure spreaders; that defendants continued to canvass said territory, with the further expenditure of time and money aforesaid and made retail sales, or, if they could have obtained delivery

from plaintiffs as per said agreement, would have made retail sales of a total of twenty-six of said spreaders at the retail prices aforesaid, before they had any intimation that the orders they might place therefor would not be filled by plaintiffs. That at this time, in May, 1915, after they had made or practically made said retail sales, the plaintiffs refused to fill and did not thereafter fill, said order for said carload of spreaders; declined to ship any of such goods to defendants, contracted with another agent in said territory and shipped to him the carload of goods which defendants had ordered and expected to receive and followed that by shipments of other carloads of goods to such new agent. That all the expenditure of time and money which defendants had to make in order to consummate said retail sales in 1915, had been made by defendants before said breach of contract on the part of plaintiffs, except the delivery of a few of such spreaders which defendants had undertaken to deliver across country; that the profit aforesaid to defendants on each of said twenty-six spreaders sold or practically sold by them was $19.50 after deduction from the gross profit the expense of delivery of those of them which had to be delivered by defendants across country, as aforesaid; that by the simple calculation or computation consisting of multiplying $19.50 by 26, the amount of aggregate profit earned by defendants would be ascertained to be $507.00 or $21.73 in excess of said $485.27 sued for by plaintiffs.

Such in brief is a summary of the evidence and of the conflict therein on material points.

## THE FACTS.

There was a trial by jury and a verdict for defendants for the sum of $8.00.

Under the rule on the subject applicable in this court

the facts of the case must be considered by us to have been in accordance with the evidence as above outlined, with the omission of the evidence for plaintiffs in conflict therewith noted in paragraph (a) above.

*A. C. Gordon* and *Jos. A. Glasgow,* for the plaintiffs in error.

*L. Travis White, Chas. Curry, Timberlake & Nelson,* and *Carter Braxton,* for the defendants in error.

SIMS, J., after making the foregoing statement, delivered the opinion of the court, as follows:

The following questions raised by the assignments of error in the case will be considered and passed upon in their order as stated below.

1. Did special plea No. 4 put the set-off claimed by defendants in issue under section 3298 of Code of Va. (the statute of set-off in Virginia), or under section 3299 of the Code of Va. (the statute of recoupment in Virginia)?

This plea states, with respect to the set-off claimed, that "the said defendants are willing and hereby offer, in pursuance of the statute in such case made and provided, to set-off and allow the same against the said sum of money supposed to be due and payable by the said defendants as demanded in the notice in this suit?"

The plea sets out in *totidem verbis* the stipulations in writing subject to which all the orders for goods were given, which were given by defendants, for the year 1913. These stipulations were parts of the plea and showed on the face of it that each order given by defendants for 1913 stood alone and formed the basis of a separate and distinct contract with plaintiffs. That these contracts for 1913, as to each order giving exclusive right to sell the goods covered by the order in certain specified territory, ended when

all the goods obtained by each respective order were sold. Therefore the ensuing allegations in the plea to the effect that the contract between plaintiffs and defendants existing in the summer of 1915, which was then broken by plaintiffs, was "upon the same basis and conditions as are set out" in said stipulations, alleged facts from which the conclusion necessarily followed that the contract, out of the breach of which arose the set-off claimed, was a separate and distinct contract from that or those under which the indebtedness sued for by plaintiffs arose.

We are therefore of opinion that the special plea under consideration put in issue the set-off claimed by defendants under section 3298 aforesaid.

2. Did special plea No. 4 describe the set-off claimed by defendants so "as to give the plaintiffs notice of its nature" as required by section 3298 aforesaid?

Such plea alleged that in "the summer of 1915 without notice to the defendants and without cause, it (the plaintiffs) sold a large amount of goods, it had promised and agreed to sell exclusively to defendants, to other parties, to-wit, to E. F. Carpenter and others, contrary to the terms of said contract with defendants. And the said defendants further say that having made and entered into said contracts with plaintiffs, they devoted much time and labor to selling the machinery mentioned in said contract and in advertising same and had agreed to sell and deliver a large amount of said machinery to customers, and had secured from their customers the promise to buy said machinery from defendants and the profits to defendants from the machinery sold as aforesaid by them to their customers would have amounted to the sum of at least one thousand dollars. But the said defendants further say that the plaintiffs disregarded its said contract with defendants, sold its said machinery to other parties than defendants in the territory mentioned in said contract, and refused to sell to defendants, so that the defendants were unable to deliver the

machinery sold as aforesaid to their customers, and to their customers who had agreed to buy said machinery from said defendants, so that defendants were caused by the plaintiffs to lose all the profits that they would have made had the plaintiffs complied with its said contract."

These allegations clearly describe the set-off as consisting of loss of profits and set forth how and from what cause the loss of profits occurred. It is not perceived how it could have described *the nature* of the set-off more clearly. It might have gone more into *particulars* as to the several items of loss of profits, such as giving the names of the customers referred to, on loss of sales to whom the loss of profits alleged occurred, but this would have added nothing to the description of *the nature* of the set-off claimed. The plea therefore was sufficient to describe *the nature* of the set-off claimed by defendants as required by the statute, section 3298 aforesaid.

The remedy of the plaintiffs to obtain further particulars of the claim was by motion for a bill of particulars under section 3249 of the Code of Virginia, not by objection to the plea. They made no such motion.

3. Was there in the instant case a meeting of the minds of the plaintiffs and defendants in 1915 upon a contract by which the plaintiffs agreed and bound themselves to sell and deliver to the defendants such number of spreaders as defendants might make retail sale of and order of plaintiffs in that year? And was there any binding obligation on the part of the defendants to take and pay for such spreaders, so as to create a mutuality of obligation in the premises?

It seems clear that the assurances of the plaintiffs to the defendants and the action of defendants upon and in accordance with the condition of such assurances, all as set forth in paragraph (b) of the statement of the evidence above, and the order by the defendants of a carload of

spreaders, and the further action of defendants in efforts to make retail sales of additional spreaders, evidenced a meeting of the minds of the parties upon a contract such as is covered by the question under consideration. That the order aforesaid created a binding obligation on the part of the defendants to take and pay for the spreaders in question to the extent of the carload of fifteen spreaders there can be no doubt; and it is further true that the refusal of the plaintiffs to ship those and any other spreaders whatsoever, under a well settled rule of law, relieved the defendants of the need to go through the useless performance of in fact giving any further order.

The question 3, under consideration must, therefore, be answered in the affirmative.

4. Was the loss of profit by defendants, on the sales of the twenty-six spreaders, which they in effect made, before the breach by the plaintiffs of the contract referred to in question 3 above, such damage as could be set-off under section 3298 of the Code of Virginia?

This statute, so far as material, is as follows:

"In a suit for any debt, the defendant may on the trial prove and have allowed against such debt, any set-off which is so described in his plea as to give the plaintiff notice of its nature, but not otherwise. * * *"

This statute has been liberally construed in furtherance of its obvious policy which is to prevent a multiplicity of suits and as far as may conveniently be done to effectuate in one action complete justice between the parties. *Allen* v. *Hart,* 18 Gratt. (59 Va.) 722, 729.

It is true that if the amount of the claim of the defendants is so unliquidated that it cannot be ascertained by computation or calculation from definite data supplied by the evidence, and lies in mere opinion, "as for instance, damages for not using a farm in a workmanlike manner; for not building a house in a good and sufficient manner;

9

on a warranty for the sale of a horse; for not skillfully amputating a limb; for carelessly upsetting a stage, by which a bone is broken; for not making repairs to a dwelling house; for unskillfully working raw materials into a fabric; and other cases of like character, where the amount to be settled rests in the discretion, judgment or opinion of the jury," such claim cannot be set-off under such statute. *Tidewater Quarry Co.* v. *Scott,* 105 Va. 160, 162, 52 S. E. 835, 115 Am. St. Rep. 864, 8 Ann. Cas. 736, quoting from *Butts* v. *Collins,* 13 Wend. (N. Y.) 139. But where the damages are to be assessed upon pecuniary demands and are determinable by computation or calculation from data supplied by the evidence, they are so far liquidated that they may be set-off under the statute in question. *Richardson Co.* v. *Whiting,* 116 Va. 490, 493; 82 S. E. 87; *Tidewater Quarry Co.* v. *Scott,* 105 Va., at pp. 162-4. *United C. M. Co.* v. *Brown,* 119 Va. 813, 89 S. E. 850.

The case of *United C. M. Co.* v. *Brown, supra,* involved in principle the same question as that now under consideration in the instant case. In that case the appellant had the exclusive right under contract with appellee to supply the demand for certain machines in certain territory, in violation of this right appellee sold a certain number of such machines in such territory, whereby appellant lost the profit he otherwise would have made on such machines so sold. This court in that case held that "the amount to which appellant thereby became entitled is simply a matter of subtraction from the price at which the machines were sold, the price which appellant was to have paid for them," and that such lost profit was such a set-off as could and should be allowed under said section 3298.

The question 4 under consideration must therefore be answered in the affirmative.

5. Were defendants entitled to set-off the full amount of $19.50 profit on each spreader, the actual consummation of

the retail sale which was prevented by the breach of contract of plaintiffs in not selling and delivering same to defendants as agreed?

It is true that such $19.50 was not net profit to the defendants on each of such spreaders. They had to incur the expenditure of the time and of some money in expense in advertising and in canvassing to make such sales. But such expenditure of time and money had been all made before the breach of contract on the part of the plaintiffs was known to defendants. The defendants, therefore, at the time they learned of the breach of contract, had earned the whole $19.50 of profit on each of such spreaders. Hence the defendants were entitled to set-off such full amount of profit on each spreader mentioned in the question we have under consideration.

It is not a case where a breach of contract occurs before the party thereto claiming damages for its breach has fully performed the contract on his part. In such case indeed the latter party must, as a general rule, as soon as he knows of such breach of contract, minimize his damages by engaging in other employment, if he can obtain it, and not persist in thereafter continuing, in order to aggravate his damages, in a course of conduct which can under the circumstances be of no value to the party who has broken the contract. The authorities cited for plaintiffs of 1 Clark & Skyles on the Law of Agency 830 and 1 Am. & Eng. Enc. of Law (2nd ed.) 1106 on the subject under consideration, have reference to cases such as next above referred to. They have no reference to such a case as that before us, where the profits in question were all completely earned by the defendants before they knew or had any intimation of the breach of contract on the part of the plaintiffs.

It should perhaps be again noted that, as has been above alluded to, any and all expense of delivery to the retail purchasers of the spreaders in question, had they been shipped

by plaintiffs, was taken care of in the prices at which they were offered to be sold by defendants, so that said $19.50 on each spreader in question did not include any such expense.

Therefore question 5 under consideration must also be answered in the affirmative.

For the foregoing reasons we find no error in the judgment complained of and it will be affirmed.

*Affirmed.*