# 𝔖taunton

MORRIS ODESSKY v. MONTEREY WINE COMPANY, INC.

September 8, 1948.

Record No. 3376.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

*Herman A. Sacks* and *Norris E. Halpern*, for the plaintiff in error.

*Maurice Steingold, Israel Steingold* and *Samuel A. Steingold*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Monterey Wine Company, Inc., hereinafter referred to as the plaintiff, is a manufacturer of wine. Morris Odessky,

hereinafter referred to as the defendant, trading as National Wine Distributors, at the time of the transaction hereinafter mentioned, was engaged in the business of bottling and selling wine at wholesale in the city of Norfolk, Virginia.

The defendant purchased from the plaintiff assorted grape and raisin wine on June 17, 1946, July 3, 1946, July 4, 1946, and August 12, 1946, of the value of $12,179.80, for which he made full payment prior to the institution of this proceeding.

In independent and separate transactions, the defendant purchased from plaintiff on July 19, 1946, 2,012 gallons of cherry wine for $4,325.80, and on August 26, 1946, 493 gallons of cherry wine for $1,099.95. These purchases, plus a federal tax of $275.75, amounted to $5,701.50. The defendant failed to pay these items when due. According to the plaintiff, he stated that he was short of funds, but would make payment later. Subsequently, he claimed that the quality of the wine failed to come up to the warranty of the plaintiff, and he was unable to sell it to the retail trade. As a result representatives of the plaintiff had a conference with the defendant at the latter's office in Norfolk on September 23, 1946. The plaintiff agreed to make a reduction of approximately 40 cents per gallon for the wine sold. This was accepted by the defendant, and the parties entered into the following compromise agreement:

"September 23, 1946.

"We, the party of the first part, known as National Wine Distributors, agree to pay to the party of the second part, known as Monterey Wine Company, the sum of $4,580.95 within the period of ninety (90) days from the above date.

"Said amount of $4,580.95 is for full payment of 2,505 gallons of Cherry Wine. Said amount also includes full payment of Federal Taxes in the amount of 15¢ per gal.

"NATIONAL WINE DISTRIBUTORS
(Signed) M. ODESSKY."

On or about November 8, 1946, the defendant placed the plaintiff on notice that he would not comply with the terms of the above agreement. Thereafter, the plaintiff

instituted this proceeding by notice of motion against Morris Odessky and Bessie Odessky, individually and trading as National Wine Distributors, for a judgment for $4,580.95. A copy of the agreement was attached to the notice of motion.

Bessie Odessky filed an affidavit denying that she owned, operated, or controlled any interest in National Wine Distributors. During the proceedings, a non-suit was taken as to her.

Plaintiff filed a bill of particulars in which it stated that while the complaint of the defendant as to the quality of the cherry wine was without foundation, nevertheless, in view of its belief that the defendant was in financial difficulty, it agreed to accept the sum of $4,580.95 in full settlement of its claim as evidenced by their written agreement.

The defendant for his grounds of defense stated that the agreement of September 23, 1946, was made upon the condition that the 2,505 gallons of cherry wine would be good and merchantable; that it later developed it was not good and merchantable; that he was unable to sell it; and that he denied liability by reason of a failure of consideration.

In addition, the defendant filed what he termed a "Special Plea of Set-off," verified by affidavit. In this plea he alleged that the *grape* and *raisin* wine purchased on June 17, July 3, July 4, and August 12, 1946, for $12,179.80, for which he had made payment, did not comply with the warranty of the plaintiff as to quality and alcoholic content; that by reason of the breach of warranty he was required to take back a vast quantity he had sold; that he suffered other expenses in connection with the effort to make it salable; and that as a proximate result he sustained the following damages:

| | |
|---|---|
| "941 Cases Bottled Wine Returned | $5,075.38 |
| 25 Cases Bottled Wine in Stock | 152.50 |
| Freight and rebate to Max Nachman | 122.20 |
| Rebate to Tidewater Distributors | 25.00 |
| Refiltration of 373 Cases Wine | 373.00 |

| | |
|---|---:|
| Refiltration on shipment to Roanoke Distributors | $ 372.00 |
| Freight on shipment to Roanoke Distributors | 496.34 |
| Freight to New Brunswick, N. J., for freezing wine | 342.70 |
| Cost of freezing wine | 894.00 |
| Loss of Federal Tax | 268.20 |
| Five days labor | 600.00 |
| Labels and caps lost | 96.60 |
| Storage charge | 200.00 |
| Total | $9,017.92" |

He prayed that the sum of $9,017.92 be applied as an offset to the debt claimed by the plaintiff and that the plaintiff pay to him the amount in excess of that debt.

The plaintiff moved to strike out the "Special Plea of Set-off" on the ground that it was a claim for unliquidated damages arising out of a transaction independent of the transaction sued on. The trial court sutsained the motion over the objection of the defendant. The case was then presented to the jury solely as to the sum due for the purchase of the *cherry wine*, the defendant being limited to the grounds stated in his grounds of defense. The jury returned a verdict for the plaintiff for the full amount claimed. Since the verdict resolved the issue as to the liability of the defendant for the purchase of the cherry wine, we need not set out the evidence in connection therewith.

The defendant's sole assignment of error is to the trial court's rejection of his "Special Plea of Set-off." In his brief, he says:

"Whether or not the plaintiff was entitled to recover on the aforementioned non-negotiable note was a question of fact, and the jury having found in plaintiff's favor we are not questioning the correctness of its verdict. We shall, therefore, confine this argument briefly to the action of the Court in rejecting the special plea of set-off."

We shall accordingly direct our attention only to the action of the court complained of.

The defendant's so-called "Special Plea of Set-off" admittedly embodied a claim for damages arising out of a different transaction from that sued on. A special plea of set-off in Virginia, in effect a statutory plea of recoupment, and an enlargement of the common law right of recoupment, is available under Virginia Code, 1942, (Michie), section 6145, (Acts 1872-73, page 196), only when the claim sought to be setoff grows out of the contract sued on. *Baker & Co.* v. *Hartman*, 139 Va. 612, 124 S. E. 425; *Richmond College* v. *Scott-Nuckols Co.*, 124 Va. 333, 342, 98 S. E. 1; *Dexter-Portland Cement Co.* v. *Acme Supply Co.*, 147 Va. 758, 766, 133 S. E. 788. In the last cited case the distinction between set-off, common law recoupment and statutory recoupment is clearly stated.

The damages claimed by defendant were clearly not allowable under the special plea of set-off provided by section 6145. The defendant contends, however, that his plea should have been considered as a plea of set-off for liquidated damages under Code, section 6144, which is, so far as material, as follows:

"In an action for any debt, the defendant may at the trial prove, and have allowed against such debt, any payment, or set-off which is so described in his plea, or in an account filed with the papers in the cause, as to give the plaintiff notice of its nature, but not otherwise. * * * "

It is generally held under statutes similar to Code, section 6144, that that which is the subject of set-off must be a liquidated demand, a debt against a debt. *Bunting* v. *Cochran*, 99 Va. 558, 39 S. E. 229; *Tidewater Quarry Co.* v. *Scott*, 105 Va. 160, 52 S. E. 835, 115 Am. St. Rep. 864; *Baker & Co.* v. *Hartman, supra*; and *Dexter-Portland Cement Co.* v. *Acme Supply Co., supra.*

The cases defining what is a liquidated demand within the meaning of statutes of set-off in Virginia and elsewhere are confusing and unsatisfactory. The confusion in Virginia arises from an effort to give the statute a liberal inter-

pretation for the purpose of preventing a multiplicity of suits and effectuating in one action complete justice for both of the parties.

Beginning on page 394 in Burks' Pleading and Practice, (3rd Ed.), the authority of which is evidenced by the frequency of its citation by the bar and the courts of Virginia, there is a clear discussion of the law of set-off, as established in this State.

On page 396, the author says:

"* * * a set-off must be a debt, or at least in the nature of a debt, and that against which it is to be set off must likewise be a debt. It must be a debt against a debt."

In 3 Blackstone's Comm., page 154, it is said: "The legal acceptation of 'debt' is a sum of money due by certain and express agreement; as by a bond for a determinate sum; a bill or note; a special bargain; or a rent reserved on a lease, where the quantity is fixed and specified, and does not depend upon any subsequent valuation to settle it."

Liquidated means that which can be ascertained by computation or calculation, from definite data supplied by evidence and does not lie in mere opinion. *New Idea Spreader Co.* v. *Rogers & Sons*, 122 Va. 54, 94 S. E. 351.

For definitions of liquidated and unliquidated damages, see 57 C. J., Set-off and Counterclaim, sections 82 (1) and 84 (2).

In *Dexter-Portland Cement Co.* v. *Acme Supply Co.*, *supra*, the Virginia cases are reviewed and analyzed. There the court refused to allow damages for the breach of an executory contract to be used as a set-off.

In *Baker & Co.* v. *Hartman, supra*, the facts are very similar to those here. Baker purchased three car-loads of potatoes from Hartman. Two cars bought in November were paid for before the last car was purchased. Each sale was an independent transaction. Baker refused to pay for the third car unless plaintiff would allow him damages claimed to have been sustained by reason of the bad quality of the potatoes shipped in the first two cars. In an action by Hartman to recover for the third car, a special plea

setting up the items of expense referred to was rejected, except as to that which related to the car of potatoes sued on.

Some of the items attempted to be set off in the above case bear a striking resemblance to those here. There Baker claimed damages as follows:

"Loss account frosted and No. 2 potatoes...$109.70
"Charged back to you, account of condition
    of potatoes in this car and back haul of
    same account of rejection." (Sundry
    items among them) "labor at Norfolk re-
    working" ........................... 57.75
"Loss of rotten potatoes, 46 bags, $2.37..... 109.02
"Labor paid Haycock & Lewis account of
    sorting out frosted and cull potatoes..... 51.50
"Profits on car ........................ 71.94" etc.

Referring to these items it was said:

"That these and many other entries of like import set out at length in the plea are speculative, uncertain and largely dependent upon the wisdom and judgment of the party asserting the claim and relate to matters about which there will always be the widest differences of opinion among men of equal intelligence and fairness, would seem to us to be self-evident. We think there can be no doubt but that the damages attempted to be recovered against the plaintiff are unliquidated and that the trial court was clearly right in so holding and in declining to set aside the verdict of the jury, and its judgment is affirmed."

There, as here, the damages demanded in each plea were either due to the inferior quality of the goods contracted for, the extent of the deficiency, and the amount of damages resulting therefrom, all subjects of inquiry and determination by a jury and dependent upon opinion.

In *New Idea Spreader Co.* v. *Rogers & Sons, supra,* at page 65, it is said:

"It is true that if the amount of the claim of the defendants is so unliquidated that it cannot be ascertained by com-

putation or calculation from definite data supplied by the evidence, and lies in mere opinion, 'as, for instance, damages for not using a farm in a workmanlike manner; for not building a house in a good and sufficient manner; on a warranty for the sale of a horse; * * * , where the amount to be settled rests in the discretion, judgment or opinion of the jury,' such claim cannot be setoff under such statute." (Citing cases).

In the present case, the plea of set-off sets up no special damages but simply general damages based on wine returned, wine refiltered, and loss on account of refunds for wine sold. There was no mutual agreement between the parties fixing the measure of damages for a breach of the contract for the sale of the cherry wine. The amount of damages claimed has never been fixed or agreed upon by the parties, and it is not fixed by operation of law, but must be ascertained by opinion based upon evidence of the circumstances and conditions surrounding the transaction between the parties, under rules of law governing breach of contract for failure of warranty of quality.

Odessky did not elect to rescind the contract and return all of the wine. The portion returned was in containers without specified gallonage and based on an arbitrary value. Whether defendant exercised reasonable care and diligence to minimize the damage after being advised of the alleged failure of warranty, but failed to do so was a matter of opinion. Whether it was wise or proper to refilter the wine, and whether or not proper measures were taken in refiltration were matters of opinion. Whether or not it was wise to expend $600 in labor and the quality of the labor employed were likewise matters of opinion. The necessity and validity of the other items claimed are entirely dependent upon the answer to the above questions.

In this court for the first time the defendant, conceding but not admitting that his plea of set-off was founded upon the plea of unliquidated damages, contends that the trial court should not have rejected his plea because plaintiff was a non-resident. For support, he relies upon *Ex parte*

*Mechanics Federal Sav., etc., Ass'n,* 199 S. C. 23, 18 S. E. (2d) 592, 139 A. L. R. 714. That case held that, under certain circumstances, equitable damages can be allowed in set-off at law. There was no question there of non-resident parties. In Virginia, equitable damages may be asserted in a plea of statutory recoupment under Code, section 6145.

The defendant also relies upon certain expressions in *Bunting* v. *Cochran, supra.* That was an equity case, and non-residence was not in issue.

The claim of non-residence of Monterey Wine Company, Inc., was not made in the court below. The record of the trial is devoid of any such suggestion. No bill or certificate of exception was taken to preserve such contention. It was not included in the defendant's claim of defense, nor was there any evidence as to the residence of the plaintiff corporation. The evidence merely showed that it had an office in New York City. The defense now invoked, therefore, could not have been considered by the trial court, and being raised for the first time on appeal, this court cannot take cognizance of it. *Settle* v. *Browning,* 145 Va. 307, 133 S. E. 769.

Moreover, the rule in Virginia is clearly set out in *Dexter-Portland Cement Co.* v. *Acme Supply Co., supra,* at page 774:

"The rule of law that an unliquidated claim may be plead as a set-off where the plaintiff asserting the demand is insolvent or a non-resident of the State applies only to equity practice, and is based upon the equitable principle of chancery jurisdiction that the defendant is without adequate remedy at law. This rule has no application to a suit at law. *Bunting* v. *Cochran, supra.* Nor does Section 6084, Code, authorize the transfer of purely legal action to the chancery side of the court because of the non-residence of the plaintiff and in order that the defendant may assert a demand as a set-off that is not pleadable in an action at law."*

---

*To the same effect see 47 Am. Jur., Setoff and Counterclaim, section 17, pp. 721, 722.

■ This case is controlled by what was said in *Dexter-Portland Cement Co.* v. *Acme Supply Co.*, *supra*, and *Baker & Co.* v. *Hartman*, *supra*, both of which we believe to be sound in principle. In accordance therewith, the trial court did not err in rejecting the plea of the defendant.

For the reasons stated, it follows that the judgment of the trial court must be affirmed. This is without prejudice, however. The defendant may hereafter take such steps to enforce his rights, if any, as appear to him necessary and proper.

*Affirmed.*