# Richmond.

## DEXTER-PORTLAND CEMENT COMPANY v. ACME SUPPLY COMPANY, INCORPORATED.

### May 27, 1926.

#### Reheard June 24, 1926.

1. APPEAL AND ERROR—*Exceptions, Bill of—Rulings on the Evidence.*— Where no bill of exception was taken as to any ruling of the court on the evidence, an assignment of error dealing with alleged errors on the part of the trial court as to rulings on the evidence offered, need not be noticed.

2. APPEAL AND ERROR—*Error in Instructions—Verdict in Favor of Party Complaining.*—Where the verdict was in favor of the plaintiff for his full claim, he cannot complain of any supposed error of the trial court with reference to the instructions.

3. DAMAGES—*Uncertain Damages—Set-off—Case at Bar.*—In the instant case, an action by a seller of cement, defendant pleaded set-off. It probably appeared from the plea itself and was certainly made clear by the evidence that the damages claimed by the plea of set-off arose out of unrelated contracts in no wise connected with those on which plaintiff's motion for judgment rested. All that they had in common was that the buyer and seller in each instance were the same. The substance of defendant's defense was that plaintiff did not furnish the cement contracted for by the other contracts, and that the defendant was forced to supply its customers from stock on hand or from that purchased, and that defendant's loss was always at least $1.25 a barrel.

    *Held:* That damages which are wholly uncertain cannot be made certain by the adoption of some arbitrary standard of loss and by charging that loss, at least, was in every instance sustained, and that the damages shown under the plea of set-off were unliquidated and arose out of contracts independent of those set out in plaintiff's motion for judgment.

4. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Set-Off and Common Law Recoupment Distinguished.*—Set-off arises out of some transaction *dehors* the transaction sued on, whereas recoupment arises out of the contract sued on. In set-off the demand must be liquidated, but in recoupment the amount need not be liquidated. Set-off may not only repel plaintiff's claim, but in Virginia (Code of 1919, sec-

tion 3304) judgment for the excess may be recovered over against the plaintiff, but recoupment may only repel plaintiff's claim, in whole or in part, and there is no recovery over. Set-off must be specially pleaded, or account thereof filed with the plea, whereas recoupment may·be shown under the general issue. Set-off may be used, though plaintiff's action is on a sealed instrument, while recoupment will not avail where plaintiff's action is on a sealed instrument.

5. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Statutory Recoupment or Special Plea of Set-Off Under Section 3299 of the Code of 1887, Section 6145 of the Code of 1919.*—The plea provided for by section 3299 of the Code of 1887, section 6145 of the Code of 1919, often miscalled "plea in the nature of a plea set-off," bears no resemblance whatever to a set-off, but is a mere enlargement of the common law right of recoupment. It arises out of the contract sued on; never out of a transaction *dehors* the contract, as in the case of set-off. The amount need not be liquidated, and it may not only repel plaintiff's claim, as in common law recoupment, but defendant may recover over against plaintiff for the excess. It must be specially pleaded and cannot be availed of under the general issue, and it may be used though plaintiff's action is on a sealed instrument. The plea may be based on equitable grounds.

6. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Unliquidated Damages Arising from an Independent Transaction—Contract for Sale of Cement—Case at Bar.*—In the instant case, an action by seller against buyer of cement, unliquidated damages, arising out of failure of seller to deliver cement upon independent contracts between the parties, are not proper matters of set-off nor of common law or statutory recoupment.

## ON REHEARING.

7. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Distinct Claims—Determining Several Courses of Action in a Single Suit—Demand and Set-Off Both in the Nature of Debts—Case at Bar.*—In the instant case, an action by a seller of cement against the buyer, defendant pleaded set-off. The five contracts set out in the plea of set-off were separate and distinct; unrelated and unconnected with the claim of the plaintiff or with each other. Under the common law practice in England and Virginia the court was without jurisdiction to hear and determine these causes of action in a single suit. An exception is made by statute (section 6144 of the Code of 1919) to this rule of practice, where the plaintiff's demand and the set-off at law are both in the nature of debts.

8. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Unliquidated Damages.*—The courts have authority to entertain pleas of set-off only where the demands on both sides are in the nature of debts. A demand for unliquidated damages cannot be set-off against an ascertai ne d

demand, nor can demands for unliquidated damages be set-off against each other, and the cross demand must appear in the nature of a debt from the plea.

9. Set-Off, Recoupment and Counterclaim—*Unliquidated Damages— Breach of Contract for Future Delivery.*—Damages for. breach of contract for future delivery of goods are unliquidated and therefore not a proper set-off.

10. Set-Off, Recoupment and Counterclaim—*Unliquidated Damages— Breach of Contract for Future Delivery—Case at Bar.*—In an action by a seller of cement for breach of contract, the defendant plead set-off, alleging loss from failure of seller to deliver cement under other contracts with the buyer. Defendant alleged that there was no market for cement at the place of delivery at the time plaintiff failed to deliver under these contracts and that it had to withdraw cement from the retail stock in its warehouse to supply cement on the contracts breached, thus attempting to make the breach of these contracts by plaintiff in the nature of a debt.

*Held:* That the defendant could not by its proof make an unliquidated claim liquidated. Whether damages are liquidated or unliquidated depends primarily upon the terms of the contract itself.

11. Set-Off, Recoupment and Counterclaim—*Unliquidated Damages— Failure to Deliver.*—To constitute a valid set-off it is not necessary that a fixed price should be agreed on for an article sold and to be delivered. If the damages do not lie in mere opinion or judgment but can be readily ascertained by calculation or computation they may be set-off against a liquidated demand. If the amount due could have been recovered as a certain demand in an action of assumpsit, it was in the nature of a debt, and the defendant had the right to plead his demand as a set-off.

12. Set-Off, Recoupment and Counterclaim—*Unliquidated Damages— Plaintiff Insolvent or Nonresident.*—The rule of law that an unliquidated claim may be plead as a set-off where the plaintiff asserting the demand is insolvent or a nonresident of the State applies only to equity practice, and is based upon the equitable principle of chancery jurisdiction that the defendant is without adequate remedy at law. This rule has no application to a suit at law.

13. Set-Off, Recoupment and Counterclaim—*Unliquidated Damages— Section 6084 of the Code of 1919, Authorizing Transfer of Legal Action to Chancery Side.*—Section 6084 of the Code of 1919 does not authorize the transfer of purely legal action to the chancery side of the court because of the non-residence of the plaintiff and in order that the defendant may assert a demand as a set-off that is not pleadable in an action at law.

14. Set-Off, Recoupment and Counterclaim—*Waiver of Exception to Court's Action in Permitting Plea.*—A plaintiff does not waive its exception to the action of the court in permitting the defendant to

file its plea of set-off by going to trial upon the issue thus made, nor from the fact that it excepted to certain evidence as too speculative and uncertain to justify recovery, but failed to bring this ruling upon the evidence before the appellate court.

15. NEW TRIALS—*Control of Trial Court over Verdicts—Section 6251 of the Code of 1919—Judgment Notwithstanding Verdict.*—By virtue of section 6251 the court is given no greater control over the verdicts of juries than it had before its enactment, and the condition of its exercise of the power to enter judgment for the defendant notwithstanding the verdict depends upon there being certain and sufficient evidence in the case to decide it upon its merits.

16. SET-OFF, RECOUPMENT AND COUNTERCLAIM—*Unliquidated Damages.*—A demand is not liquidated even if it appears that something is due, unless it also appears how much is due, and it is not liquidated when it is admitted that one of two or more sums is due. If there is a genuine controversy as to what is due, that is to say which of said sums is due, it is still an unliquidated demand.

17. SALES—*Damages—Breach of Contract by Seller.*—In the instant case there was testimony for the defendant buyer that it had to supply cement from its warehouse to fill contracts breached by plaintiff's failure to make deliveries under the contracts between the parties. There was also testimony that there was no market at the place and time of delivery for cement, and that the amount that defendant would have made on its cement furnished to fulfill the contracts in question would have been at least $1.25 per barrel.

*Held:* That these facts did not justify an exception to the rule that the measure of damages in case of breach of contract by seller's failure to deliver is the difference between the agreed price and the market price at the time and place of delivery.

18. SALES—*Damages—Specific Work Contracts—Case at Bar.*—The instant case was an action arising out of a contract of sale brought by the seller for cement delivered under the contract. Defendant plead set-off for failure of the seller to make deliveries on other contracts for cement between the parties. The contracts were work contracts and it did not appear whether the defendant sold the cement to the purchaser from it at a specific price or market price at the time of delivery.

*Held:* That the contracts between the defendant and its purchasers were collateral to the contracts between the parties to the suit and could not furnish a different measure of damage for breach of these contracts than the usual measure of damages where the seller fails to make delivery.

Error to a judgment of the Corporation Court of the city of Newport News, in a proceeding by motion for a

judgment for money.  Judgment for defendant.  Plaintiffs assign error.

*Reversed.*

The opinion states the case.

*Garnett, Taylor & Edwards*, for the plaintiff in error.

*J. Winston Read, Nelms, Colona & McMurran*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

The plaintiff in error was plaintiff in the court below.  The defendant in error was defendant there, and so for convenience the parties will be designated as they were in the trial court.

For some years prior to the institution of this action the plaintiff had been a cement manufacturer, with its plant located at Nazareth, Pennsylvania, and the defendant had been a dealer at Newport News, handling large quantities of cement, lime, plaster and other building material, and, as such dealer, had been the representative or agent of the plaintiff for the sale of its cement in Newport News and Hampton.

The plaintiff filed its notice of motion for judgment on February 11, 1921, claiming $1,018.09 to be due from the defendant with interest from the 31st day of July, 1920.  This indebtedness was evidenced by certain protested checks of the defendant and a small balance on account.  It grew out of two specific work sale contracts numbered 3228 and 3229, which contracts are not otherwise involved in this litigation.  These claims were not denied and judgment therefor went without protest.

Defendant did, however, claim offsets amounting to $4,195.00. They are set up in detail in a plea filed on March 3, 1924, and grew out of transactions known as specific work sales contracts and an open order contract.

Whenever the defendant secured an order to furnish cement to a particular contractor for a particular piece of work, it, on the strength thereof, would place an order with the plaintiff for material necessary. This was a specific work sale contract and differed in its terms from those contracts in which the defendant bought cement for its own use to be sold by it at retail from its warehouse or otherwise as it might see fit. This last contract was an open order contract.

Three contracts of the first class are set out in the plea. One numbered 1,211 bore date of October 20, 1919, and it is charged that the defendant failed to supply 343 barrels of cement at the contract price of $2.73, and that such failure entailed a loss of $1.25 a barrel, or $428.75.

Two other contracts of this class, numbered 1,407 and 1,408, were entered into on February 5, 1920. The cement in this instance was to be furnished to Harwood and Moss, contractors. The price agreed upon was $2.83 a barrel. There was a shortage here of 750 barrels. The loss claimed was $1.25 a barrel or $937.50.

The last of these contracts, numbered 1,460, bears date April 19, 1920, and is known as the street railway contract. The price agreed upon was $2.95 a barrel. There was a shortage of 445 barrels, which, on a like basis of calculation, entailed a loss of $555.00.

In addition to these items there was an open order contract of date July 9, 1920, numbered 2,974 for ten cars of cement. The contract price being "$3.33 for

1st car—balance at market price at time of shipment." Of this order only one car was shipped. It is said that, assuming that the cars were of average capacity, there was a shortage here of 1,818 barrels and that in this instance, also, a loss of $1.25 a barrel, or of $2,272.50, was suffered.

In due course these issues were submitted to the jury which returned a verdict for the plaintiff in the full amount claimed in its notice. None of the offsets were allowed by it. This verdict the defendant moved to set aside as being contrary to the law and the evidence. That motion the trial court sustained to the extent that it did allow in full every offset claimed in the defendant's plea and it is in this form that this case comes before us for consideration.

Four errors are assigned. They are:

"1. To the court's refusal to grant the plaintiff's motion to reject the plea of set-off.

"2. To certain rulings of the court on the evidence offered.

"3. To the refusal by the court to grant plaintiff's instructions Nos. 2, 3, 4, 6, 7 and 8 as offered; to the amendment to instructions 3 and 4 and the giving of the same as amended; to the granting of the defendant's instructions Nos. 1, 2, 3, 4, 5 and 6.

"4. To the granting of the defendant's motion to set aside the verdict of the jury as rendered and entering up final judgment over against the plaintiff, in the sum of $3,171.82 with interest as above."

[1] Assignment No. 2 deals with alleged errors on the part of the trial court as to rulings on the evidence offered, but since no bill of exception was taken as to any ruling of the court on the evidence, this need not be noticed. *Walters* v. *Norfolk & Western Railway Co.,* 122 Va. 149, 94 S. E. 182.

[2] Likewise assignment No. 3 need not be discussed. Since the verdict of the jury was in favor of the plaintiff for its full claim, it cannot complain of any supposed error of the trial court with reference to the instructions. *Fox* v. *Mason*, 139 Va. 667, 124 S. E. 405.

The first and fourth assignments involve the same proposition; namely, that the trial court in entering up the judgment on matters set out in the plea applied an improper measure of damages, in that under this plea and the evidence no damages could be recovered at all. These assignments for convenience will be considered together.

[3] It probably sufficiently appears from the plea itself that the damages claimed and therein set up arise out of unrelated contracts in no wise connected with those on which the motion for judgment rests. All that they have in common is that the buyer and seller were in each instance the same. If it be that this does not sufficiently appear from the plea itself it is made clear by the evidence in the case. The substance of this defense is that plaintiff did not furnish cement contracted for with reasonable promptness, in fact that it did not furnish it at all, and that the defendant was forced to supply its customer from stock on hand or from that purchased in the open market at prices not shown. In many instances loss is based upon estimated profit on sales never completed. It is said that this loss always was at the least $1.25 a barrel. The evidence is that it was in most cases greater. Just how great it is difficult to say from the testimony. But this evidence does strongly tend to support the charge that there was a loss which varied from sale to sale and was always more than $1.25 a barrel.

Damages which are wholly uncertain cannot be made

certain by the adoption of some arbitrary standard of loss and by charging that loss, at least, was in every instance sustained. We think that the damage here shown is unliquidated and arises out of contracts independent of those set out in plaintiff's motion.

[4, 5] The difference between set-off, common law recoupment and statutory recoupment admirably appears in a note by Prof. Lile, 7 Va. Law Reg. 332. That statement is:

*"Set-Off.*

"1. Arises out of some transaction *dehors* the transaction sued on.

"2. The demand must be liquidated.

"3. May not only repel plaintiff's claim, but (in Virginia) judgment for the excess may be recovered over against the plaintiff. (Va. Code, section 3304.)

"4. Must be specially pleaded, or account thereof filed with the plea. (Va. Code, 3298.)

"5. May be used, though plaintiff's action is on a sealed instrument.

*"Common Law Recoupment.*

"1. Arises out of the contract sued on.

"2. Amount need not be liquidated.

"3. May only repel plaintiff's claim (in whole or in part)—no recovery over.

"4. May be shown under the general issue.

"5. Will not avail where plaintiff's action is on a sealed instrument.

*"Statutory Recoupment.*

"With these may be contrasted *statutory recoupment* under Code, section 3299—often miscalled 'plea in the nature of a plea set-off.' This plea bears no resemblance whatever to a set-off, but is a mere enlargement of the common law right of recoupment:

"1. Arises out of the contract sued on (never out of a

transaction *dehors* the contract, as in the case of set-off. —*Am. Manganese Co.* v. *Manganese Co.*, 91 Va. 272, [21 S. E. 466]).

"2. Amount need not be liquidated.

"3. May not only repel plaintiff's claim (as in common law recoupment), but defendant may have *recovery over* against plaintiff for the excess. This is one of the chief purposes and advantages of the statutory proceeding.

"4. Must be specially pleaded (the statute so declares, section 3299) and cannot be availed of under the general issue.

"5. May be used though plaintiff's action is on a sealed instrument. This is another advantage of the statutory recoupment over recoupment at common law.

"6. May be based on *equitable* (as distinguished from *legal*) grounds."

This court recently had occasion to consider this question in the case of *Baker* v. *Hartman*, 139 Va. 612, 124 S. E. 425—a case very much in point. The first paragraph of its syllabus sustained by the text and by authorities cited is as follows:

"In the instant case plaintiff sold defendant three carloads of potatoes. The first two cars were paid for before the last car was purchased, each sale being an independent transaction, with no connection save that the purchaser and seller were the same in each instance. Defendant refused to pay for the third and last car unless plaintiff would allow certain damages claimed to have been sustained by reason of the bad quality of the potatoes shipped in the first two cars. On motion by plaintiff to recover the amount due on the last car, the court refused to allow defendant to plead by way of set-off damages sustained by it in the purchase of the other two cars."

[6] We have seen that unliquidated damages arising out of independent transactions make up in their entirety the claims of the defendant. Under the authorities cited they are not in this case proper matters of set-off nor of common law or statutory recoupment.

It follows that the judgment of the court below must be reversed and final judgment entered here in accordance with the verdict of the jury which is the sum sued for with proper interest. This is without prejudice. The defendant may hereafter take such steps to enforce its rights as appear necessary and proper.

## UPON REHEARING.

June 24, 1926.

Christian, J., delivered the opinion of the court.

In order to properly discuss the questions raised upon this rehearing, it is necessary to make a brief statement of the facts out of which this controversy arose.

The Dexter-Portland Cement Company is a large manufacturer of cement at Nazareth, Penn., and the Acme Supply Company, Incorporated, handles large quantities of builders' supplies, including cement, for sale in Newport News, Virginia, and the adjacent territory. For several years prior to this suit the Acme Supply Company, Incorporated, represented the Dexter-Portland Cement Company in this territory, and their dealings were mutually satisfactory.

Beginning in the spring of 1920 there was a serious car shortage upon most of the railroads of the country, and shippers of cement, with others, were alloted cars upon a percentage basis. These transportation restrictions produced a shortage of cement and the demands of the building trades could not be supplied,

therefore the price of cement advanced considerably by reason of its scarcity. The cement manufacturers had sufficient cement to meet the demand, but could not get cars for its transportation.

In this condition of affairs the Acme Supply Company, Incorporated, had six specific work contracts for cement with the Dexter-Portland Cement Company, and in June, 1920, placed an open order contract with it, which was accepted upon the terms therein contained. The Acme Supply Company, Incorporated, did not receive as much cement as it needed, and was constantly writing to the Dexter-Portland Cement Company to make larger shipments. To these requests the Dexter-Portland Cement Company replied and claimed that it was shipping upon these contracts the *pro rata* number of cars that were due thereon.

About July 1, 1920, two of these specific contracts were completed and for which there was due $1,018.09 to the Dexter-Portland Cement Company. The Acme Supply Company sent its checks for this cement, but before they were collected stopped payment thereof. It, however, deposited the amount in one of the national banks of Newport News, and wrote the Dexter-Portland Cement Company complaining that it was not shipping upon its unfilled contracts, because of the price, and was using the cars received to ship upon higher price current orders. Some correspondence took place between the parties, and finally the Dexter-Portland Cement Company revoked all of the specific work contracts between them, upon the ground that stoppage of payment of the checks, in its opinion, impaired the Acme Supply Company's credit, and justified their revocation as provided in the contracts.

The Dexter-Portland Cement Company filed its notice of motion in the Corporation Court of Newport

News to recover the above amount due from the Acme Supply Company, Incorporated. The parties hereafter will be referred to as plaintiff and defendant, the positions occupied in the trial court. The defendant admitted the amount due the plaintiff, but tendered a plea of set-off against this claim amounting to $4,195.00. The plaintiff moved the court to reject the plea, which motion the court overruled, and ordered the plea filed, to which action the plaintiff excepted. There was a jury trial upon the issue thus presented. The jury found for the plaintiff and against the defendant. Upon motion of the defendant the verdict of the jury was set aside, and the court by virtue of section 6251, Code 1919, proceeded to enter judgment for the full amount of defendant's claim, less the amount admittedly due the plaintiff. To this action of the court the plaintiff also excepted.

[7] The five contracts set out in the plea of set-off were separate and distinct; unrelated and unconnected with the claim of the plaintiff or with each other. Under the common law practice in England and Virginia, the court was without jurisdiction to hear and determine these causes of action in a single suit. By early statute, which is now embodied in section 6144, Code 1919, an exception was made to this rule of practice, where the plaintiff's demand and the set-off at law are both in the nature of debts. *Wartman* v. *Yost*, 22 Gratt. (63 Va.) 595.

[8] Thus we find the rule of established practice in Virginia to be, that the courts have authority to entertain pleas of set-off only where the demands on both sides are in the nature of debts. A demand for unliquidated damages cannot be set-off against an ascertained demand, nor can demands for unliquidated damages be set-off against each other, and the cross

demand must appear in the nature of a debt from the plea. *Christian* v. *Miller*, 3 Leigh (30 Va.) 78, 23 Am. Dec. 251; *Bunting* v. *Cochran*, 99 Va. 558, 39 S. E. 229; *Webster* v. *Couch*, 6 Rand. (27 Va.) 519.

[9] The counter demands set up in the plea are based, first, upon the open order. It provided that the price should be the market price of cement at the time of delivery, and shipment was made dependent upon car supply. Second, the specific work contracts fixed the purchase price of cement at from $2.73 to $2.93 per barrel. The cement could be used only upon the jobs designated in the contracts, and the shipments were to be made as provided in one contract before the 30th of June, 1920, and in the others unless extended by the seller before December 30th. For the breach of each of these contracts the usual measure of damages was the difference between the contract price and the market price of cement at the time that delivery should have been made. In the early case of *Christian* v. *Miller, supra,* the court held that where the defendant's demand arises out of the breach of a contract to deliver a quantity of corn at a future day, it is strictly a demand for unliquidated damages and therefore not a proper set-off. This case which holds that damages for breach of contract for future delivery of goods are unliquidated has never been overruled.

[10] The pleader in order to make the breach of these contracts in the nature of a debt, and not unliquidated damages, alleged in the plea of set-off that there was no market for cement in Newport News on account of the disorganization of transportation, and that it had to withdraw cement from the retail stock in its warehouse to supply cement on the contracts breached. The defendant could not by its proof make an unliquidated claim liquidated. Whether damages

are liquidated or unliquidated depends primarily upon the terms of the contract itself. Bouvier's Law Dictionary "Liquidated Damages."

[11] It is true that the Supreme Court has held that to constitute a valid set-off it is not necessary that a fixed price should be agreed on for an article sold and to be delivered. If the damages do not lie in mere opinion or judgment, but can be readily ascertained by calculation or computation, they may be set-off against a liquidated demand. An examination of the cases in which this rule was enunciated will show that it is not an exception to the general rule heretofore stated. In the case of *Tidewater Quarry Co.* v. *Scott*, 105 Va. 160, 52 S. E. 835, 115 Am. St. Rep 864, 8 Ann. Cas. 736, the plaintiff sued for a debt. When the plaintiff took possession of the quarry the defendant had thereon a quantity of prepared stone and coal at the quarry which the plaintiff sold and used. The defendant had two remedies (1st) an action of tort for damages for the conversion of the material or (2nd) an action of *indebitatus assumpsit* for goods had and received. The court held if the defendant elected to waive the tort and rely upon the implied contract to pay the value of the goods, it might be set-off against the plaintiff's demand.

In the case of *New Idea Spreader Co.* v. *Rogers & Sons*, 122 Va. 54, 94 S. E. 351, the defendant sold under contract twenty-six manure spreaders which the plaintiff had agreed to deliver at a specific price and for which defendant was entitled to receive $19.50 each by way of profit. The contract was breached and plaintiff refused to ship the spreaders. The amount due could have been recovered as a certain demand in an action of assumpsit, therefore was in the nature

of a debt, and the defendant had the right to plead his demand as a set-off.

The *United Cigarette Mach. Co.* v. *Brown,* 119 Va. 815, 89 S. E. 850, L. R. A. 1917F, 1100, presented this state of facts in the plea of set-off. The Winston Company, of which Brown was the largest stockholder, controlled and managed the same, had agreed to furnish the United Company Briggs Machines at a certain price, and gave the latter the exclusive right of sale of these machines except within the United States. Brown breached this contract and sold several machines in Canada and other foreign countries. The cost of the machines was not a matter of dispute between the parties, nor the price at which Brown sold them in foreign countries, so that the appellant's damages were a matter of mere computation and calculation, therefore was a proper offset or claim in the nature of a debt due it from Brown, who was seeking to recover dividends due him and unlawfully withheld by the appellant.

The case of *Richardson Company* v. *Whitney L. Co.,* 116 Va. 490, 82 S. E. 87, shows when unliquidated damages became a matter of calculation or computation and therefore the subject of a plea of set-off. This was a case where the vendor sold to the vendee lumber; it furnished part of the lumber according to contract, but failed to deliver other lumber according to agreement. The vendee bought in the open market the lumber necessary to complete the contract. Upon suit by vendor to recover for lumber delivered, the vendee filed a plea of set-off for the amount it had to pay for lumber not delivered under the contract. The plea of set-off was rejected because for unliquidated damages, this was reversed. Judge Harrison in the opinion of the court stated the rule of law in substance as follows:

When a vendor fails or refuses to deliver property, the measure of damages is usually the difference between the contract price and the market price at the time and place of delivery, with interest, and the vendee for his own protection has the right under the circumstances to buy the goods *in the open market*, and charge the difference in price to the vendor's account. In such case the law implies a promise on the part of the vendor to repay the money which the vendor has been compelled to pay for him, and for it *indebitatus* assumpsit will lie. The liability of the vendor, whether technically liquidated or not, is so far suspectible of definite proof as to be a valid set-off against a money demand asserted by the vendor against the vendee. The right to maintain *indebitatus* assumpsit for a claim is a test in favor of its allowance as a set-off, and not whether the demand is liquidated or unliquidated.

[12, 13] The rule of law that an unliquidated claim may be plead as a set-off where the plaintiff asserting the demand is insolvent or a nonresident of the State applies only to equity practice, and is based upon the equitable principle of chancery jurisdiction that the defendant is without adequate remedy at law. This rule has no application to a suit at law. *Bunting* v. *Cochran, supra.* Nor does section 6084, Code, authorize the transfer of purely legal action to the chancery side of the court because of the nonresidence of the plaintiff and in order that the defendant may assert a demand as a set-off that is not pleadable in an action at law.

[14] We do not think that the plaintiff waived its exception to the action of the court in permitting the defendant to file its plea of set-off by going to trial upon the issue thus made, nor from the fact that it excepted to certain evidence as too speculative and uncertain to justify recovery, but failed to bring this ruling upon the evidence before this court.

[15] If the evidence was too speculative or uncertain to sustain a verdict, it would unquestionably be a claim for unliquidated damages, and is preserved in the exception to the action of the court in setting aside the verdict, and entering judgment for the defendant, especially where the jury had found that the evidence was insufficient to prove the defendant's case. By virtue of section 6251 the court is given no greater control over the verdicts of juries than it had before its enactment, and the condition of its exercise of the power to enter judgment for the defendant, notwithstanding the verdict, depends upon there being certain and sufficient evidence in the case to decide it upon its merits. *Kendricks* v. *City of Norfolk*, 139 Va. 702, 124 S. E. 210.

[16] A demand is not liquidated even if it appears that something is due, unless it also appears how much is due, and it is not liquidated when it is admitted that one of two or more sums is due. If there is a genuine controversy as to what is due, that is to say which of said sums is due, it is still an unliquidated demand. *Nassoiy* v. *Tomlinson*, 48 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695. In this case it is argued, and has been elaborately argued, that the damages are uncertain even if it be admitted that damage at all had been inflicted, and in considering this proposition it was of course necessary to consider all questions that were involved in determining whether the damages were liquidated or unliquidated. Thus, in the petition for the writ in the instant case, the plaintiff in error quotes from *New Idea Spreader Co.* v. *Rogers & Sons, supra,* as follows:

"If the amount of the claim of the defendant is so unliquidated that it cannot be ascertained by computation or calculation from definite data supplied by the evidence, and lies in mere opinion, where the amount

to be settled rests in the discretion, judgment or opinion of the jury, such claim cannot be set-off under the statute, section 3998 of the Code 1904."

[17] The defendant's manager in this case testified that there was no market for cement in Newport News, and that it had cement in its warehouse for its retail trade, some of which it had bought from another manufacturer, and if it had not been forced by the plaintiff's breach of its contract to supply its warehouse cement upon those contracts it would have made at least $1.25 per barrel thereon, and that was the amount of damages it should recover from the plaintiff. It purchased its cement from the manufacturers at wholesale, and Beal's opinion and judgment of whether there was a market in Newport News and the amount it would have made on its cement by retail sale did not justify an exception to the rule of law that the measure of damages in case of breach was the difference between the agreed price and the market price at the time of delivery.

[18] There is certainly nothing in the open order contract to show that any other measure of damages than that ordinarily fixed by law for the breach of delivery of the cement sold was in contemplation of the parties. While in the specific work contracts it does not appear whether the defendant sold the cement to the purchasers from it at a specific price, or market price at the time of delivery, therefore, the contracts between the defendant and its purchasers were collateral to the contracts between the parties to this suit and cannot furnish a different measure of damage for breach of these contracts. In the case of *Trigg* v. *Clay*, 88 Va. 330, 13 S. E. 434, 29 Am. St. R. 728, the plaintiff was allowed to recover the profits lost upon resale of the lumber, because the defendant knew it had been

resold and delivery was to be made at a point where other lumber could not be purchased for plaintiff's customer.

But Judge Lewis dissented from the opinion of the court making this exception to the general rule as to the measure of damages.

The evidence in this case is such that the jury would have to base its verdict upon judgment or opinion, therefore, whether the damages sought to be recovered are denominated unliquidated damages or speculative profits, they do not partake of the nature of a debt, nor are capable of calculation or computation, hence the court could not enter judgment thereon.

For the reasons above set forth our former judgment is affirmed.

*Reversed.*