IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
AUGUST 6, 2003 Session

## TENNESSEE INDUSTRIAL MACHINERY COMPANY, INC. v. ACCURIDE CORPORATION

**Direct Appeal from the Chancery Court for Maury County**
**No. 98-342     James T. Hamilton, Chancellor**

_____

**No. M2002-01844-COA-R3-CV - Filed January 6, 2004**

_____

This appeal involves the lower court's award of a garnishment judgment against Accuride Corporation, as well as its subsequent denial of Accuride's Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment. For the following reasons, we reverse the judgment of the lower court and remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Bradley A. MacLean, James B. Johnson, Nashville, TN, for Appellant

James T. DuBois, D. Scott Porch, IV, Columbia, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Accuride Corporation ("Accuride") is a wheel manufacturer who operated a manufacturing plant in Columbia, Tennessee from October 1997 through May 2002. In October 1997, Accuride received a proposal from Industrial Finishing Systems, Inc. ("IFS"), in which IFS offered to design, procure, and install a wheel paint line system for Accuride's plant. On November 1, 1997, Accuride accepted IFS's proposal and agreed to pay a total price of $1,395,000.00 for the wheel paint line system. This total price was separated into incremental payments as follows:

Thirty percent (30%) upon issuance of the purchase order;
Thirty percent (30%) upon approval of drawing;

Twenty percent (20%) upon approval of construction, authorization and shipment;
Ten percent (10%) upon installation and operation of system; and
Ten percent (10%) thirty days after system operates to Accuride's satisfaction.

After finalizing this contract, IFS then entered into an agreement with Tennessee Industrial Machinery, Inc. ("TIMCO"), in which IFS agreed to pay TIMCO five percent of the contract price with Accuride in exchange for TIMCO's aid in locating and purchasing an industrial paint system.

The wheel paint line system was installed over the following months according to schedule. Upon its completion, however, Accuride found that the system did not perform in a satisfactory manner. Accuride informed IFS of the performance problems by letter dated October 27, 1998, and then tried to ameliorate the problem by hiring other contractors and suppliers to repair the system, at a cost of $170,000.00. As a result of these developments, Accuride withheld some of the payment that would otherwise have been due on its contract with IFS. During this same period, TIMCO also experienced contractual problems with IFS. Specifically, IFS failed to pay TIMCO the five percent commission provided for in their contract. On June 8, 1998, TIMCO filed a lawsuit for breach of contract against IFS in the Chancery Court of Maury County. TIMCO also named Accuride as a garnishment defendant in that action, alleging that Accuride owed money to IFS for the paint line system and that this debt to IFS should be garnished to satisfy IFS's debt to TIMCO.

On August 21, 1998, the trial court entered an Interim Order/Restraining Order against Accuride that restrained any final payment to IFS on the paint line system contract. A Temporary Injunction, ordering substantially the same restraint, was then entered on October 30, 1998. On November 16, 1999, the lower court entered judgment, on the breach of contract claim, in favor of TIMCO against IFS for $107,816.23. The judgment further ordered Accuride to pay to the Clerk & Master all payments, originally meant for IFS, that were retained by Accuride pursuant to the restraining order. Accuride did not make the payment, and, on January 10, 2000, TIMCO served a garnishment on Accuride that sought "any and all property of Defendant [IFS] in Garnishee's possession, including, but not limited to, any accounts payable and funds due Defendant." Accuride filed an Answer to the Garnishment on February 2, 2000, alleging that it was not indebted to IFS. Accuride acknowledged that it held retainage from IFS in the amount of roughly $140,000, but argued that this amount was to satisfy "unliquidated claims" against IFS in excess of the retainage amount. On April 28, 2000, TIMCO filed a motion entitled "Motion for Order to Show Cause and for Judgment Against Garnishee Defendant." TIMCO's motion was accompanied by two documents. The first was a letter dated November 9, 1998, from Accuride to IFS, in which Accuride indicated its intention to retain the final ten percent payment of $139,500.00 to offset damages occasioned by the faulty paint line system. Specifically, this letter stated that:

The above problems [with the paint line systems] have cost Accuride tens of thousands of dollars for its personnel and contractors to make repairs, as well as lost production due to conveyor downtime. The lost production has threatened us with loss of business, which we can no longer afford. We have no more confidence that IFS is willing or able to correct these problems. Our October 27 letter was our final

attempt to allow IFS to correct the situation. As a result, we must now hire other contractors and suppliers at a cost of over $170,000 to correct these problems. Unfortunately, we must retain the final 10% payment of $139,500 to partially pay for these corrections.

The second document, from Accuride's financial department, was a February 3, 2000 payment history indicating that Accuride paid IFS a total of only $825,300.00 on the paint line system contract.

The lower court conducted a hearing on TIMCO's motion on May 23, 2000. TIMCO alleged that the February 3, 2000 payment history made clear that Accuride held retainage in the amount of roughly $570,000.[1] TIMCO argued that this retainage amount was more than adequate to cover the garnishment amount of $107,816.23, as well as any unliquidated claims Accuride might have. Upon completion of the hearing, the trial court found that Accuride was retaining only "One Hundred Thirty-nine Thousand Five Hundred ($139,500) Dollars, in funds which belong to Defendant, IFS." The lower court then acknowledged that "Accuride alleges that they have unliquidated claims against IFS over the improper installation of certain machinery which is the subject of this lawsuit." The trial court found, however, that "allegations of unliquidated claims are not sufficient to justify withholding these funds and not honoring the garnishment." Consequently, judgment was entered in favor of TIMCO against the garnishee Accuride in the amount of $107,816.23.

On February 9, 2001, Accuride filed a motion for new trial or to alter or amend the judgment. The garnishee argued that the trial court's judgment was contrary to both the evidence presented at the hearing, as well as the relevant law in Tennessee. The lower court conducted a hearing and subsequently denied Accuride's motion in an order dated June 27, 2002. The trial court found that Accuride had presented no new evidence unknown to it at the time of the prior hearing, nor had Accuride shown any other ground that merited relief pursuant to Tenn. R. Civ. P. 59. The trial court also noted that Accuride had failed to demonstrate any mistake, inadvertence, or other basis for relief under Tenn. R. Civ. P. 60. Finally, on July 25, 2002, Accuride filed the instant appeal challenging the judgment of the lower court.

**Issue Presented**

Accuride raises one issue for our consideration:

I.   Whether the trial court erred in entering a garnishment judgment in favor of judgment creditor TIMCO against garnishee Accuride, despite Accuride's contention that it was not indebted to the principal judgment debtor, IFS.[2]

---

[1]   TIMCO arrived at this figure by subtracting the amount allegedly paid by Accuride, $825,300.00, from the total amount due on the contract, $1,395,000.00.

[2]   Accuride's issue on appeal challenges the grant of garnishment judgment and, thus, the original order granting the judgment. In its brief, TIMCO argues that Accuride should be barred from challenging the original order

(continued...)

-3-

## Standard of Review

Accuride's appeal challenges the January 12, 2001 judgment of the lower court, which was entered by a Chancellor sitting without a jury. We review the trial court's conclusions of law under a *de novo* standard, with no presumption of correctness. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002). With respect to the trial court's findings of fact, our review is *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick*, 90 S.W.3d at 569.

## Law and Analysis

The only issue for our review arises from the lower court's January 12, 2001 grant of garnishment judgment in favor of TIMCO. Accuride argues that the judgment is erroneous because Accuride is not indebted to IFS, the principal judgment debtor. Accuride acknowledges that it retained $139,500.00 from IFS, which represents the final ten percent of the contract price for the paint line system. Accuride contends, however, that it has unliquidated claims against IFS, arising from the faulty performance of the paint line system, that exceed the retained amount. As such, any money due IFS on the contract would be more than offset by the damages due Accuride. According to this line of reasoning, there is nothing to be garnished because there is no debt owing to IFS. The lower court was unconvinced by this argument, finding that "allegations of unliquidated claims are not sufficient to justify withholding these funds and not honoring the garnishment." The issue we must address, therefore, is whether, as a matter of law, unliquidated claims may be used to defend against a garnishment judgment.

Tenn. Code Ann. § 29-7-112 (2002) provides that a final garnishment judgment may be entered against a garnishee only where "it appears that the garnishee is indebted to the [principal judgment debtor] defendant." It falls upon the trial court, then, to determine the indebtedness of the garnishee before entering judgment. *Meadows v. Meadows*, No. 88-135-II, 1998 WL 116382, at *2 (Tenn. Ct. App. 1998) (citing *Cheatham v. Trotter*, 7 Tenn. (1 Peck) 198 (1823)). As the court makes this determination, it must bear in mind the general rule that a "plaintiff is not to be placed in any better position, nor the garnishee in any worse position, than he would be if defendant himself was enforcing his claim." *Gray v. Houck*, 68 S.W.2d 117, 118 (Tenn. 1934) (citation omitted). This is because "the plaintiff in garnishment is, in his relation to the garnishee, substituted merely to the rights of his own debtor, and can enforce no demand against the garnishee which the debtor himself, if suing, would not be entitled to recover." *Id.* In *Gray*, the Tennessee Supreme Court makes clear

---

[2](...continued)

because Accuride did not file its notice of appeal until July 25, 2002, far in excess of thirty days after entry of the January 12, 2001 original order. We cannot agree. Tenn. R. App. P. 4(a) sets forth the general thirty-day limit for notices of appeal. However, subsection (b) of Rule 4 specifies that certain post-trial motions will toll this thirty-day limit. Tenn. R. Civ. P. 59.04, which provides for motions to alter or amend a judgment, is one such post-trial motion. Rule 4(b) states that "under Rule 59.04 . . . the time for appeal for all parties shall run from the entry of the order . . . granting or denying any such motion." Accuride filed its notice of appeal within thirty days of the lower court's denial of the Rule 59.04 motion. Accordingly, Accuride's appeal of the original order suffers from no infirmity.

that the plaintiff in a garnishment action merely succeeds to the rights of the principal judgment debtor. As such, the plaintiff is subject to all defenses which the proposed garnishee might raise against the principal judgment debtor himself. In the instant case, we must, therefore, determine whether Tennessee law would allow Accuride to use its unliquidated claims as a defense to an action brought by IFS to recover the $139,500.00 at issue.

In *Howard v. Abernathy*, 751 S.W.2d 432 (Tenn. Ct. App. 1988), this Court addressed the doctrine of recoupment, which is the use of unliquidated claims to defend a breach of contract action. We held, in relevant part, that:

> Recoupment is the right of a defendant to have a deduction from the amount of plaintiff's damages for the reason that the plaintiff has not complied with the cross obligations or independent covenants arising under the same contract. Black's Law Dictionary, Fourth Edition, p. 1439; *Hoover Commercial Co. v. Humphrey*, 107 Miss. 810, 66 So.214 (1914) . . . [A]ny claim or demand the defendant may have against the plaintiff . . . is not a subject of recoupment unless it grows out of the very same transaction which furnishes the plaintiff's cause of action. *Dexter-Portland Cement Co. v. Acme Supply Co.*, 147 Va. 758, 133 S.E. 788 (1926); *Lovett v. Lovett*, 93 Fla. 611, 112 So. 768 (1927). Recoupment is the right to set off unliquidated damages . . . [and is] applicable only to contract actions in which the suing party has also violated some term of the contract.

*Id*. at 434. As this language makes clear, a defendant in a breach of contract action may raise its unliquidated claims as a defense to limit or cancel out any damages which may be due plaintiff. The first requirement for application of this doctrine is that defendant's claims grow out of the same transaction that furnishes plaintiff's claims. In the present matter, Accuride's unliquidated claims arise from the paint line system contract, which does, in turn, give rise to any potential claim IFS might have for the $139,500.00. The second requirement states that recoupment applies only in contract actions in which the plaintiff has also breached some provision of the contract. That requirement is also satisfied in the instant case, as any action between IFS and Accuride would sound in contract and would involve allegations that IFS breached the contract by failing to provide a satisfactory wheel paint line system. Having considered the relevant authority, it appears, as a matter of law, that Accuride would be able to use its unliquidated claims as a defense if IFS were to pursue a breach of contract action for the $139,500.00 at issue. It necessarily follows, then, that Accuride may also use those claims to defend against an action brought by a purported garnishor, who "can occupy no higher ground than the debtor, in asserting rights against the garnishee." *Gray*, 68 S.W.2d at 118. Consequently, the trial court erred when it found, as a matter of law, that unliquidated claims may not be used by a garnishee to defend against a garnishment action.

## Conclusion

For the foregoing reasons, we reverse the ruling of the lower court and remand for a determination, consistent with this order, of the garnishee's indebtedness to the primary judgment debtor.  Costs of this appeal are taxed to the Appellee, Tennessee Industrial Machinery, Inc., for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE