**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 24-1981**

---

In re: ALL AMERICAN BLACK CAR SERVICE, INC.,

Debtor.

------------------------------

ALL AMERICAN BLACK CAR SERVICE, INC.,

Plaintiff - Appellee,

v.

JAMSHAID GONDAL; MOHAMMAD SHEIRYAR,

Defendants - Appellants.

---

**No. 24-1982**

---

In re:  ALL AMERICAN BLACK CAR SERVICE, INC.,

Debtor.

------------------------------

ALL AMERICAN BLACK CAR SERVICE, INC.,

Plaintiff - Appellant,

v.

JAMSHAID GONDAL; MOHAMMAD SHEIRYAR,

Defendants - Appellees.

_____

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:24-cv-00248-LMB-IDD; 1:24-cv-00257-LMB-IDD)

_____

Argued:  September 10, 2025                              Decided:  October 15, 2025

_____

Before WILKINSON, THACKER and HEYTENS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:**  Virginia Whitner Hoptman, REDMOND, PEYTON & BRASWELL, Alexandria, Virginia, for Appellants/Cross-Appellee.  John Paul Forest, II, Fairfax, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Robert M. Marino, REDMOND, PEYTON & BRASWELL, Alexandria, Virginia, for Appellants/Cross-Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This dispute arises from the winding up of a closely held corporation and requires us to review several rulings made during the course of a bankruptcy trial. Specifically, we must decide whether the bankruptcy court erred by excluding certain testimony, rejecting a ratification defense, denying lost profit damages, and permitting a set off.

We have reviewed the record and discern no reversible error. Therefore, we affirm.

I.

A.

All American Black Car Service, Inc. ("Appellee") was, at all relevant times, a Virginia corporation that provided high end limousine services. Appellee had three shareholders. Sohail Cheema owned 51%. Mohammad Sheiryar and Jamshaid Gondal ("Appellants") owned the remaining 49% in even shares.

In addition to being minority shareholders, Appellants were also employees. Sheiryar worked in the office, and Gondal managed the fleet of vehicles. Because they wore many hats, they had multiple forms of income. Appellants took nominal wages as W-2 employees throughout the year, but they made the bulk of their money through end of year shareholder distributions.

COVID-19 took its toll on many small businesses, and Appellee was no exception. In 2020 and 2021, Appellee did not generate enough revenue for shareholder distributions. And matters did not improve through September 2022, at which point the three shareholders decided to dissolve the corporation. They mutually agreed that they would liquidate the fleet, pay off all existing debts, and split any leftover money according to their

pro rata ownership interests. But that leftover money was supposed to sit in an escrow account until the shareholders reached a final agreement on the dissolution of the corporation.

All went according to plan for a while. Between late September 2022 and mid-March 2023, Appellants sold 10 of the 12 cars belonging to Appellee,[1] which brought in $317,000. After paying off Appellee's existing debt -- which totaled $88,559.31 -- roughly $228,000 remained. Then Appellants veered off course. Rather than placing the money in escrow as agreed, they pocketed the $228,000.

Around the same time, Cheema had apparently decided to resuscitate the business, which had incurred some new debt and found itself in Chapter 11 bankruptcy. As part of that bankruptcy, Appellee filed this adversarial proceeding against Appellants, through which Appellee sought return of the $228,000 and lost profit damages.

B.

The case proceeded to a bench trial, where Appellants admitted they took the $228,000 but raised two affirmative defenses. Appellants first argued they were owed wages for time worked between 2020 and 2022, wages they said exceeded $228,000. In support, Sheiryar testified about the number of hours he had worked during that period. In order to establish his hourly rate, Sheiryar sought to introduce into evidence a chart that listed a range of acceptable hourly rates for workers in his position. But the bankruptcy

---

[1] Cheema retained one vehicle, and the other was in the shop for repairs. It was later sold, and the money from that sale was used to pay the mechanic's bill.

4

court excluded it, finding that those figures were improper expert testimony.  As the court explained, Sheiryar was improperly trying to make "a market determination," and had "pull[ed] [his] numbers" from internet sources, such as "pay scale[,] ziprecruitersalary.com, et cetera."  J.A. 169–70.[2]  Because Sheiryar had no other way to establish his hourly rate, the bankruptcy court determined that he had not proved his entitlement to unpaid wages.  Gondal, for his part, did not testify about his unpaid wages.

For their second affirmative defense, Appellants argued that Appellee had ratified their pocketing of the $228,000 because Appellee had reported that money as distributions to Appellants on its 2022 taxes.  When questioned about this at trial, Cheema testified that he had reported the money in that manner on the tax return in order to "ratify" the sales of the vehicles, meaning to confirm that those sales had occurred.  The bankruptcy court heard this evidence and found that Cheema, a native Urdu speaker, did not fully understand the legal implications of the word "ratify."  The court also concluded that Appellee had not received any benefit from Appellants keeping the full $228,000 and, as a result, had not ratified the act.

Appellants may have gone zero-for-two on their affirmative defenses, but they did not strike out entirely.  The bankruptcy court, for instance, ruled that Appellee failed to prove its lost profit damages to a reasonable degree of certainty and therefore denied that requested relief.  The bankruptcy court also ruled that, despite being liable for converting the $228,000, Appellants were entitled to a set off for their proportionate equity stake in

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties to this appeal.

the company.  That resulted in a 49% reduction in the judgment.  As a result, the final judgment amount was $116,504.76.

## C.

Both parties appealed to the district court.  Appellants, for their part, appealed the bankruptcy court's rulings excluding Sheiryar's testimony and denying their ratification defense.  The district court affirmed both.  It first found that even if the bankruptcy court had erred in excluding Sheiryar's testimony, such uncorroborated testimony could not sustain a claim for unpaid wages.  As for the ratification defense, the district court said that it had reviewed the bankruptcy court's ruling and did not "see any fact-finding that was erroneous."  J.A. 831.

For its part, Appellee appealed the bankruptcy court's rulings denying it request for lost profit damages and allowing Appellants a set off.  The district court affirmed those rulings, too.  In doing so, it explained that the bankruptcy court's decision to allow a set off was equitable under the circumstances and did not warrant reversal.  It also held that Appellants could not be on the hook for any lost profits because all three shareholders had agreed to wind up the business and Cheema alone took it upon himself to revive the company.

Appellant appeals this adverse ruling, and Appellee cross appeals.[3]

---

[3] For consistency, we refer to the parties throughout by their alignment in the main appeal.

## II.

"When reviewing the judgment of a district court sitting in review of a bankruptcy court, we apply the same standard of review as applied by the district court." *Smith v. Devine*, 126 F.4th 331, 341 (4th Cir. 2025). "That is, we review the bankruptcy court's legal conclusions de novo, its factual findings for clear error, and any discretionary decisions for abuse of discretion." *Id.* (quoting *Copley v. United States*, 959 F.3d 118, 121 (4th Cir. 2020)).

## III.

## A.

We begin with the main appeal, in which Appellants assign two points of error.

First, Appellants argue that the bankruptcy court erred by excluding Sheiryar's testimony, in which he sought to opine on the appropriate hourly rate of pay for his labor. Appellants contend that this testimony should have been admitted as a lay opinion pursuant to Rule 701 of the Federal Rules of Evidence. We disagree. To qualify as a lay opinion, the proffered testimony "must arise from the personal knowledge or firsthand perception of the witness." *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575 (4th Cir. 2017). Sheiryar, however, did not seek to opine on what he thought his time was worth based on his own experience in the limousine industry. He instead sought to testify about what others -- such as ZipRecruiter -- had said his type of work was worth. Because this information was not based on Sheiryar's own knowledge or experience, we cannot say that the bankruptcy court abused its discretion in excluding Sheiryar's testimony.

7

Second, Appellants argue that the bankruptcy court erred by rejecting their ratification defense. Here, too, we disagree. The bankruptcy court -- sitting as the finder of fact -- heard the evidence and found no basis to conclude that Appellee had acquiesced to Appellants unilaterally awarding themselves a distribution. In fact, the record demonstrates that Appellee effectively repudiated Appellants' actions by filing this suit -- in which Appellee sought to claw back the funds -- within weeks of learning that Appellants had kept the money. Therefore, we see no clear error.

B.

We now turn to Appellee's cross appeal.

As an initial matter, we hold that Appellee has waived any argument that the bankruptcy court erred in denying it lost profit damages. Rule 28(a)(8)(A) of the Federal Rules of Appellate Procedure requires the argument section of an appellant's opening brief to state the appellant's "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." But, here, Appellee's argument in support of reversal consists of nothing more than two conclusory sentences, each devoid of citations to the record or legal authority. We therefore find these "conclusory remark[s] . . . insufficient to raise on appeal any merits-based challenge to the [bankruptcy] court's ruling," *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006), and consider the argument waived.

Moving on, we conclude that Appellee's remaining assignment of error -- that Appellants were not entitled to a set off for their equity interest in the corporation -- is meritless. The three shareholders had mutually agreed to wind up the company, which

8

entailed liquidating the corporation's assets, paying off all debts, and splitting any leftover funds. And because the shareholders had taken the first two of those steps, Appellants were entitled to their pro rata share of the leftover funds by operation of Virginia law. *See* Va. Code. Ann. § 13.1-745(A) (2019) (allowing shareholders to "[m]ak[e] distributions of [the corporation's] remaining assets among . . . shareholders according to their interests" once the corporation has settled its debts).

Appellee's arguments are untimely otherwise. For one, Appellee cannot now argue that the set off affirmative defense was not pled. The parties tried the issue below without objection, and having done so, Appellee cannot identify any unfair surprise or prejudice. *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 n.3 (4th Cir. 2004) ("[I]t is well established that an affirmative defense is not waived absent unfair surprise or prejudice."). Further, Appellee never raised below its argument -- premised upon *Dexter-Portland Cement Co. v. Acme Supply Co.*, 147 Va. 758 (1926) -- that Virginia law does not permit a set off in these circumstances.[4] And we decline to consider it for the first time on appeal.

## IV.

Finding no reversible error, the judgment below is

*AFFIRMED*.

---

[4] Pursuant to *Dexter-Portland Cement Co.*, a defendant may seek a set off when it "[a]rises out of some transaction dehors the transaction sued on" and is liquidated. 147 Va. at 766.

9